Minshall, J.
The grounds on which the act in question is claimed to be unconstitutional are stated *156 in the answer. They are, 1. That it is a special act conferring corporate power. 2. It impairs the obligation of contracts. 3. It contains more than one subject of legislation. It is sufficient to say in regard to the latter, that it has been permanently settled by the decisions of this court, that the provision of the Constitution on which this objection is placed, is directory and not mandatory; and that a law cannot be held invalid because it contains more than one subject of legislation.
With, regard to the first ground: If this act were the only source of the company’s authority to be a corporation and construct a railroad, the validity of the act might well be questioned. The company, however, is one organized under the general laws of the state, and has the same corporate powers and franchises, possessed by railroad corporations in general. Hence, its corporate powers and franchises are not conferred on it by this act; they are derived from the general law; and the provisions of the act in this regard are superfluous and cannot of themselves impair the validity of the act. As a railroad corporation it possessed, by general law, the power to build a railroad between the termini named, and to acquire by purchase or condemnation a right of way for its road, and other property necessary for its operation. And if it were competent to the state to abandon its canal and dispose of it to any purchaser, as has been frequently held, it was competent to the company to purchase it for the uses of its road. The transaction authorized by the law was simply an abandonment of ihe Hocking Canal by the state, and the disposition of it to an existing railroad corporation for a consideration agreed on. The fact that the state through its *157 legislature saw fit to deal with this company rather than some other one, or did not offer the property at a competitive bidding, or might have made a better bargain, cannot affect the validity of the law. Such matters must necessarily be left to the discretion of the legislature, acting for the state in the disposition of its property. There is no constitutional provision limiting its power in this regard. For its wisdom and integrity in exercising this power, the legislature is responsible to the people and not to the courts.
The case of the City and County of San Francisco v. Water Works Co., 48 Cal., 493, is cited to show that the act in question here, confers corporate power. This we think is not the case. The grant there was of an easement in the streets of a city. The court held, and properly, that the state had no proprietary interest in the streets of a city dedicated to public use; that such a grant was the grant of a franchise, which could not be made by a special act. Here, however, the state was the proprietor of the Hocking Canal, and could, as it did, grant it, not as a franchise, but as property of which it was the owner.
It is also contended that the act confers a power on the defendant to lease a railroad not conferred on other roads under like circumstances. It is a sufficient answer to this to say, that the power conferred is not to lease a railroad, but to lease land for the purpose of a railroad in process of construction; and this any company may do in acquiring its right of way. The state has no railroad to lease, it has simply land for such purpose. The company by the lease does not obtain the control of a competitor, it can, at most, become a competitor of another road; and the provision for leasing is, *158 therefore, neither within the letter nor spirit of the law regulating the leasing of one road by another.
We come now to the question, Does this law, as claimed, impair the obligation of contracts? As a first instance of this, it is claimed, that it violates a contract of the state with the general government. The facts are stated in detail in the petition. From these it appears that the general government in 1828 donated 500,000 acres of land to aid the state in the construction of its canals. A portion of the proceeds of these lands were used in constructing the Hocking Canal. • By the act making the donation, the terms of which were accepted by the state, it was provided that, “the said canals when completed or used, shall be and forever remain, public highways, for the use of the government of the United States free from any toll or charge whatever, for any property of the United States, or persons in their service passing along the same.” It will be observed that the provision does not in terms oblige the state to keep up and maintain the canals for all time. The obligation is limited to the time “when completed or used.’’’1 To require them to be kept up for all time, irrespective of their utility, would be unreasonable and could not have been intended by the parties. It must certainty have been contemplated that, in course of time, the canals might become useless, as they have, for the purposes of commerce and navigation. The contract, as all others, must be given a reasonable construction. If such contingencies were not contemplated, yet an exception to the obligation would be created, by the law of reason, and the state might abandon them without violating its contract with the United States. The *159 reasonable construction of the language then is, that, since the state is not by express language bound to keep up the canals for all time, so long as they are kept up and used, the obligation in favor of the general government shall be observed; and when they cease to be kept up or used, the obligation ceases. This must have been the implicit understanding of the parties at the time; and therefore the state does not by this act impair the obligation of its contract with the general government. But a more decisive answer to this contention is, we think, that none of these parties show that they were in any way parties to the agreement between the state and the United States, or that it was made for their benefit. They cannot insist that the contract of the state with the United States shall be maintained for their benefit. The United States has not heretofore made, nor is it now making, any objection, and it would seem time enough to consider the matter when it does. Wright, one of the plaintiffs, says he made the improvements on his mill with reference to the contract, though there is not a word in the contract of his predecessor, Worthington, from whom he claims to derive his rights, in respect to the matter. But what legal right has anyone to make investments on the faith of a contract between others and to which he is not a party or privy and insist for that reason that the contract shall be observed by either of the parties? We see none.
We pass now to a brief notice of the special facts of the several cases. Wright insists that the abandonment of the canal will impair the obligation of a contract made between the state and his predecessor in title, Thomas Worthington, to whose rights he has succeeded; and which was made at *160 the time the canal was constructed. Worthington then owned a grist mill located on the Hocking river, which was supplied with water from the river by a dam constructed on it. That in consideration of his granting the state the right to construct the canal through the river and his lands and to appropriate the water to the use of the canal, the state agreed to enlarge and forever maintain the dam across the river above the mill, so as to afford an ample supply of water both for the canal and the mill. He does not, and cannot, claim any title in the canal or its lands. This part of the canal was constructed under the act of 1825 whereby the state took a fee simple in all the lands appropriated by it for the use of its canals. State ex rel. v. Railway Co., 53 Ohio St., 189, 243; State of Ohio v. Snook et al., 53 Ohio St., 121; Malone v. Toledo, 34 Ohio St., 541. Whether the obligation of this contract is one that runs with the land in favor of a purchaser of Worthington, or was simply personal and did not accompany the land in the ownership of others, or whether it appears, from the facts alleged, that he will be injured by the vacation of the canal, or is such an obligation as must end with the abandonment of the canal, (Hubbard v. Toledo, 21 Ohio St., 379; Fox v. Cincinnati, 33 Id., 492,) need not be determined in this case. His remedy would be in damages for the breach of the contract and not to enjoin the company from entering upon the lands purchased from the state, and in which he has no interest. His remedy, if any, is saved to him by the provision in the statute, that “the company shall not disturb any vested rights or privileges of abutting property holders along said canal, and shall hold the state harmless from all loss or damages resulting to such property holders *161 by reason of the construction and operation of said railroad.!!
What has just been said applies with equal, if not greater, reason to the claim of Shotwell. It is certainly settled by the decisions just cited, that a contract made by the state through its board of public works with an individual for the use of the water of any of its canals for a period of years, terminates with the use of the canal, and that it is under no obligation to keep up the canal for such purpose, after the canal has become useless for the purpose of navigation and has been abandoned. The agents of the state have no power to make such a contract in the name of the state or to bind it thereby.
It is claimed by some of the plaintiffs that they have interests in the canal as abutting property holders, and that they cannot be deprived of these rights without compensation, and may enjoin the company from taking possession of the lands until their interests have been condemned and paid for by appropriation proceedings. The company is enjoined by the statute from interfering with the vested rights of abutting owners, until compensation has been made. It does not, however, define what these vested rights are. Manifestly to be vested, they must be such as are recognized by law, as property of an individual that could be enforced against the state. If the right does not exist as against the state, it does not as against the company. Fox v. Cincinnati, 33 Ohio St., 492, 502. The claim of these parties is based upon the decision in Street Railway Co. v. Cummingsville, 14 Ohio St., 523. That was the case of a street that the company was about to occupy with its track, and two of the defendants in error were *162 abutting property holders on the street; and it was held that they had such rights in the street for the purposes of ingress and egress-as could not be taken until paid for. But the owner of property abutting on a canal has not the same, nor a similar, interest in it, that an owner of property abutting on a highway or street has. The owner of property abutting on a street or highway has, for the purposes of access to his property a direct and not an incidental interest in the street. It is one of the purposes for which the street was established. But an owner of property abutting on a canal has no such interest in the canal. Such benefits as he may derive from it in the way of water, drainage, etc., are accidental and the fact that he is an abutting owner confers no right on him to insist that the canal shall be kept up and maintained to secure him in the enjoyment of such advantages; and can maintain no action to prevent the canal from being abandoned. This is well settled by the decisions in this state, and seems well sustained by reason and the analogies of the law. In general, one owner can claim no right to such advantages as he may enjoy from the manner m which an adjacent owner may, for the time being, occupy and use his own property. Hence, the claim of Vought, that he cannot be deprived of the use of the canal as a means of drainage for his farm, until compensation has been made him for the benefit thus conferred on his land, though he has put in many miles of tiling with reference to the canal as a means of drainage, cannot be sustained.
Finally it is claimed by Vought and Walsh that the portion of the canal on which their lands are situate was formerly owned and constructed by the Lancaster Lateral Canal Co., a private corpora *163 tion organized under an act of the legislature in 1826 (24 Ohio Laws, 71). That under an act of the legislature, the state purchased the canal of this company in 1838, and it then became a part of the Hocking Canal. That by the terms of the act under which the Lateral Company was organized it only took an easement in the lands taken by it for canal purposes, and that the state by the purchase acquired no other or greater title than the company had to convey; and hence that on the abandonment of this part of the canal the land reverts to the owners of the freehold. The question here presented seems settled by the previous decisions of this court. In Corwin v. Cowan, 12 Ohio St., 629, the question arose as to the title to the Warren County Canal, after it had been abandoned by the state. The canal had been constructed, as in this ease, by a private corporation, organized under an act of the legislature, and was afterwards purchased by the state and made a part of its canal system under an act of the legislature. The company had been authorized by its charter to enter upon, take and use such lands as might be necessary for the location and construction of its canal. The court held, that the act authorizing the purchase of the canal was prospective in its nature and did not affect the locations and appropriations of lands which had previously been made by the canal company, and that the easement which the company had acquired by location and appropriation, passed to the state under the act without being enlarged into a fee simple estate in the lands so appropriated; and further that upon the abandonment of the canal by the state, the easement terminated, and the right to the possession of the lands constituting the line of the canal reverted to the owners *164 of the freehold. A similar question arose in the case of McComb v. Stewart, 40 Ohio St., 647, and it is there said, page 665, “whether the property-taken is paid for in money or in accruing benefits and advantages, it should clearly appear by the terms of the act that it was the legislative intent to take a fee before such effect can be given to it. In the absence of express words, a fee will not be deemed to be taken where the purposes of the act will be satisfied with the taking of an easement.” Citing Washington Cemetery v. Railroad Co., 68 N. Y., 591. The judge then quotes from Cooley as follows: “In any case an easement only would be taken, unless the statute plainly contemplated and provided for the appropriation of a larger interest. ” Const. Him., 559.
' A careful consideration of the act under which the Lateral Company acquired its lands for canal purposes, fails to disclose any purpose whatever to authorize it to acquire a fee simple therein. It is provided in section 8 of the act that it should be lawful for the directors “to enter upon and take possession of lands, etc., necessary to make said canal;” and in case the lands are not given or granted, and they are unable to agree with the owner, to appropriate the same. When appropriated they are to take a complete title to the premises to the extent and for the purposes set forth in and contemplated by the act. The purpose contemplated by the act is the use of the land for canal purposes so long as the canal is maintained. So that when the use ends the title, they were permitted to take, ends; for it is not a title in fee simple they are permitted to take, but a complete one for the uses and purposes of the canal. The company could not then when the use ends sell *165 them to others, on the contrary the lands must revert to the owner of the freehold. And, as held in Corwin v. Cowan, the state took no greater estate in the lands than the company had to convey, the result is the same, on their abandonment by the state for canal purposes, as if the company had continued to use them to the time of the abandonment.
What has just been said relates, however, to the simple abandonment of a canal, as in the case of Corwin v. Cowan, supra. Where, however, as in this case, the abandonment of a canal is made as part of a transaction by which the easement is conveyed by the owner for a similar use — as for the purposes of a railroad — the original easement in the lands is not extinguished, but passes to the purchaser, who takes it subject to the duty of making- compensation to the owner of the freehold for the additional burthen imposed on the land, and such damages as may result to him from the new use. Hatch v. Railroad Co., 18 Ohio St., 92, 122. In this case the canal, by an agreement between the canal company and the railroad company, had been acquired and taken possession of by the latter company; and on the claim of the plaintiff, a landowner, the court said: “The plaintiff was entitled to compensation from the railroad company for the full value of such land as it may have taken from him not embraced in the appropriation made by the canal company; and for such additional burdens as may have been imposed on the lands covered by the original appropriation; and for damage done or accruing to his adjacent lands, by reason of the additional burthen, if any, and of the change of structure and of use from those of a canal to those of a railroad, in so far as such damages are *166 peculiar to himself as a proprietor, and not common to the public at large. As the owner of land, subject to a perpetual easement, but appropriated and paid for only for the purposes of a canal, he had rights which the railroad company cannot be permitted to ignore; and which, we think, it ought to have instituted proceedings regularly, under the statute, to condemn and pay for, before it ventured to divert the easement to uses so varient from those originally intended. But this not having been done, and the plaintiff having resorted to this action for compensation, the rights of the parties are governed by the same principles which would have been applicable in such a proceeding. ’ ’ The principles of this case have never been disturbed, and may be regarded as the settled law of the state. It settles the rights of the parties in the cases of Vought and Walsh, and the rules by which compensation and damages are to be awarded to each of them, in a proceeding by the railroad company to condemn their lands.
The court then is of the opinion that the judgment in the case of Wright, and also in the case of Shotwell should be affirmed; and that the judgment in the case of Vought and in that of Walsh should be reversed; and judgment rendered in favor of each enjoining the railroad company from entering-upon the lands of either, until condemned and paid for according to law.

Judgment in each case accordingly.

Burket, J;, dissents as to the 5th paragraph of the syllabus.